UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FRANK SACKS, individually,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 12 C 4553 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| **NILES TOWNSHIP HIGH SCHOOLS,** | ) |
| **DISTRICT 219,** an Illinois Municipal | ) |
| Corporation, and **JOHN HEINTZ,** individually | ) |
| and as agent, servant and employee of NILES | ) |
| TOWNSHIP HIGH SCHOOLS DISTRICT 219 | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Frank Sacks filed a one-count first amended complaint against defendants John Heintz and Niles Township High Schools, District 219 ("District 219"), alleging an unconstitutional prior restraint under the First Amendment of the United States Constitution and 42 U.S.C. § 1983.[1] Before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, the motion [#24] is granted in part and denied in part.

### BACKGROUND[2]

Sacks is a professional tennis instructor and sole shareholder of Frank Sacks Tennis Camps, Inc. ("Sacks Tennis Camps"), an Illinois corporation. Am. Compl. ¶¶ 9, 12. The Village of Lincolnwood has an intergovernmental agreement with District 219 to use District 219's facilities for community athletic programs. *Id.* ¶ 15. Residents of Lincolnwood sign-up

---

[1] This court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is appropriate under 28 U.S.C. § 1391(b).

[2] The facts in the Background section are taken from Sacks's first amended complaint and the exhibits attached thereto and are presumed true for purposes of resolving defendants' motion to dismiss. *See Travel All Over the World, Inc.* v. *Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir. 1996).

for community tennis programs through the Village and the Village, in turn, contracts with Sacks and Sacks Tennis Camps to provide instruction for the programs. *Id*. ¶¶ 16–18. Sacks and Sacks Tennis Camps have used District 219 facilities to provide tennis programs to the community since 1981. *Id*. ¶ 13.

On January 13, 2011, after issues arose between Sacks Tennis Camps and District 219 security over whether a second tennis court could be used by Sacks Tennis Camps, a Sacks Tennis Camps participant was escorted from the building by a District 219 security guard. *Id*. ¶¶ 20–34. Thereafter, in early or mid-March 2011, District 219 Superintendent Nanciann Gatta sent an undated letter to Jan Hincapie, Director of Parks and Recreation for the Village of Lincolnwood, which was copied to seven individuals, including the mayor of Lincolnwood. *Id*. ¶ 35. The letter stated in part,

> On January 13, 2011, representatives of Mr. Sacks failed to follow the direction of District security to clear a court that was not scheduled for use. Significantly worse, however, the representative of Mr. Sacks resorted to a threat suggesting physical violence while speaking with the security officer. This last episode makes it no longer possible for the District to continue the relationship with the Frank Sacks' tennis program. . . . Mr. Sacks and his program are no longer welcome in the District's schools upon completion of the remaining currently scheduled events through April 21, 2011.

*Id*. Ex. 1.

Subsequently, on May 12, 2011, Heintz, Assistant Superintendent for Human Resources and Chief Legal Officer for District 219, sent Sacks a letter informing him that he was personally banned from District 219 athletic events because of the January 13, 2011 incident and his distribution of flyers to promote his business at a District 219 athletic event on April 12, 2011. *Id*. ¶¶ 39–40 & Ex. 2. In his letter, Heintz stated,

> Based upon the recent occurrences and your prior conduct, be advised that you are hereby notified that you may not be present at D219 sporting events for the following calendar year between the dates of May 11, 2011 to May 11, 2012,

> unless your child is participating in the event. You are banned from handing out flyers or otherwise soliciting business on D219 property or at D219 activities . . . . Additionally, you are banned from speaking with D219 personnel, unless you have an applicable reason for doing so as a parent of a D219 student.

*Id*. Ex. 2.[3]

Neither Gatta nor Heintz had investigated the January 13, 2011 incident before sending their respective letters. *Id*. ¶ 44. On April 17, 2012 and May 1, 2012, administrative hearings took place with regard to the various penalties levied against Sacks. *Id*. ¶ 46. During these hearings, both security guards present during the January 13, 2011 incident testified that the individual they had an exchange with on that date never suggested that he would physically harm them, contrary to what had been represented in the two letters. *Id*. ¶ 47. Heintz testified that District 219's School Code provided him with the authority to restrict conduct, including speech, when necessary to preserve the safety of the District's students. *Id*. ¶ 48.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937,

---

[3] Sacks alleges that, in the letter, Heintz threatened Sacks with "immediate prosecution" if he violated the ban on speaking with District 219 personnel. First Am. Compl. ¶ 43. But the letter attached to the first amended complaint, which controls over conflicting allegations, does not include such a threat. *See N. Ind. Gun & Outdoor Shows, Inc.* v. *City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

Sacks alleges that District 219 and Heintz violated the First Amendment by prohibiting Sacks from speaking to District 219 personnel. Defendants argue that (1) Sacks has failed to properly allege a *Monell* claim pursuant to *Monell* v. *Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); (2) the official capacity claim brought against Heintz is actually a claim against the municipality; and (3) Heintz is entitled to qualified immunity.

**I.     District 219**

To state a § 1983 claim against District 219, Sacks must establish that an official custom or policy caused a deprivation of his First Amendment right to free speech. *See Monell*, 436 U.S. at 690–91. To establish an official policy or custom, Sacks must show that "(1) [District 219] has an express policy that, when enforced, causes a constitutional deprivation; (2) [District 219] has a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled that it constitutes custom or usage within the force of law; or (3) a person with final policymaking authority caused the constitutional injury." *Brandt* v. *Bd. of Educ. of the City of Chicago*, 420 F. Supp. 2d 921, 936 (N.D. Ill. 2006).

District 219 contends that Sacks's claim should be dismissed because he has not identified which *Monell* prong he is pursuing and, regardless, he failed to set forth the basis for his *Monell* claim. Sacks, however, is not held to a heightened standard in pleading a *Monell* claim, even after *Twombly* and *Iqbal*. *See McCormick* v. *City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000) (citing *Leatherman* v. *Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)); *Riley* v. *Cnty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010). "[A]n official capacity claim can survive even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Riley*, 682 F. Supp. 2d at 861.

Sacks's failure to explicitly identify the *Monell* prong is not fatal to his claim against District 219, for a plaintiff need not plead legal theories if the alleged facts are sufficient to show that the claim is plausible. *See Hatmaker*, 619 F.3d at 743. Moreover, Sacks clarified in his response that he is arguing that District 219 maintains an express policy—the school code—that when enforced, as alleged here, causes a constitutional deprivation. Although the specific details of the policy are lacking, Sacks has sufficiently provided defendants with notice of the alleged wrongdoing, citing to Heintz's testimony in the 2012 administrative hearings.

District 219 also argues that Sacks's *Monell* claim should be dismissed because it improperly seeks to impose *respondeat superior* liability on District 219. *See Sornberger* v. *City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006) (a government agency cannot be held vicariously liable under § 1983). District 219 argues that the first amended complaint includes no allegation of an express policy but only that Heintz "believed" he had the authority to restrict Sacks's speech pursuant to the school code. But this is a mischaracterization of Sacks's allegations, which never allude to a "belief." *See* First Am. Compl. ¶ 48 ("Mr. Heintz stated that

5

he had the authority to restrict Plaintiff's speech under the District's School Code. Mr. Heintz stated that District's School Code provides the District and its administrative staff with the authority to restrict conduct, including speech, when it is necessary to preserve the safety of the District's students."). Taking Sacks's allegations as true, he is not seeking to impose liability on District 219 based solely on Heintz's actions but rather based on an alleged express District 219 policy to which Heintz testified during the administrative hearings. The parties will be allowed to proceed to discovery to develop the contours of this alleged policy.

## II.     Heintz

### A.     Official Capacity Claim

Sacks has sued Heintz in both his official and individual capacities. Actions against individual defendants in their official capacities are treated as suits against the governmental entity itself. A suit against a public official in his official capacity is a claim against the municipality of which the official is an agent. *Richman* v. *Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). Sacks's claim against Heintz is identical to that brought against District 219. Thus, the official capacity claim against Heintz is redundant and therefore will be dismissed. *See Admiral Theatre* v. *City of Chicago*, 832 F. Supp. 1195, 1200 (N.D. Ill. 1993) ("Where the unit of local government is sued as well, the suit against the officials is redundant and should therefore be dismissed.").

B.  Individual Capacity Claim

Heintz also argues that he is entitled to qualified immunity from the claim brought against him in his individual capacity. Qualified immunity shields government actors from civil damages, unless they violate a clearly established constitutional right. *Xiong* v. *Wagner*, 700 F.3d 282, 289 (7th Cir. 2012). In determining whether qualified immunity applies, a court considers "'(1) whether the plaintiff's allegations show that the defendant violated a constitutional right, and (2) whether that right was clearly established at the time of the defendant's conduct.'" *Id*. (quoting *Hernandez ex rel. Hernandez* v. *Foster*, 657 F.3d 463, 473 (7th Cir. 2011).[4] Sacks has the burden to demonstrate that Heintz violated an established constitutional right. *Kernats* v. *O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). In determining whether the constitutional right was clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right' at the time of the incident." *Id*. (alteration in original) (quoting *Anderson* v. *Creighton*, 483 U.S. 635, 639–40, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). Courts look to factually similar case law in making this inquiry. *Id*.

Taking the facts alleged in the first amended complaint as true and drawing all reasonable inferences in Sacks's favor, the court cannot conclude that qualified immunity protects Heintz at this time. This court previously determined that Sacks sufficiently alleged a First Amendment violation, *see* Dkt. No. 18 at 9–12, and Heintz does not challenge this finding. As to the second inquiry, Sacks alleges that Heintz prohibited him from speaking with all District 219 personnel both on and off school property and both during and not during school

---

[4] Qualified immunity is generally presented in a summary judgment motion but can also be raised on a motion to dismiss. *Stevens* v. *Umsted*, 131 F.3d 697, 706 (7th Cir. 1997) (citing *Wilson* v. *Formigoni*, 42 F.3d 1060, 1064 (7th Cir. 1994). *But see Jacobeit* v. *Rich Twp. High Sch. Dist. 227*, 673 F. Supp. 2d 653, 661 (N.D. Ill. 2009) (qualified immunity "is almost always a bad ground for dismissal and is better addressed at summary judgment" (citation omitted) (internal quotation marks omitted)).

hours, essentially a blanket prohibition on speech without, according to Sacks, any justification. *See* First Am. Compl. Ex. 2. It is well-established that a blanket restriction on speech in a public forum is not permissible under the First Amendment but rather must be reasonable in time, place, and manner. *Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983); *Surita* v. *Hyde*, 665 F.3d 860, 870 (7th Cir. 2011) ("Government may enforce reasonable time, place, and manner restrictions provided they are content neutral, they are narrowly tailored to serve a significant government interest, and ample alternative channels of communication exist."). Accordingly, Heintz's qualified immunity defense does not bar Sacks's claim, but Heintz may raise this affirmative defense on a motion for summary judgment. *Cf. Alvarado* v. *Litscher*, 267 F.3d 648, 651–52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: '[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.'" (alteration in original) (quoting *Jacobs* v. *City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000))).

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss [#24] is granted in part and denied in part. Sacks's claim against Heintz in his official capacity is dismissed with prejudice. Defendants have until August 23, 2013 to answer the first amended complaint. This case will be called for a status hearing and scheduling conference on September 26, 2013 at 8:30 a.m.

Dated: August 2, 2013                                       ENTER

                                                                            _____
                                                                            JOAN HUMPHREY LEFKOW
                                                                            United States District Judge